NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-927

BETH A. FORTES

vs.

EUGENE B. FORTES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Eugene B. Fortes (husband) appeals from a judgment of divorce from Beth A. Fortes (wife) issued by a judge of the Probate and Family Court.[1]  He argues that the judge erred by (1) dividing the proceeds from the sale of the former marital home equally, and (2) valuating his pension as of the date of

_____

[1] The husband filed a notice of appeal from the judgment entered on March 20, 2024.  Thereafter, the judge, who had reserved the right to prepare a supplemental judgment, rationale, and findings should either party file an appeal, did so on May 20, 2024.  The amended judgment corrects an error related to the calculation of the proceeds from the sale of the marital home that remained in the escrow account.  Although the husband did not file an appeal from the amended judgment itself, we exercise our discretion and review the divorce judgement dated May 20, 2024, and entered May 21, 2024.  See generally Roch v. Mollica, 481 Mass. 164, 165 n.2 (2019).

the divorce judgment, rather than at an earlier time when, he alleges, the wife's contribution to the marital partnership ended.  We affirm.

Background.  We summarize the facts from the judge's findings and the uncontradicted evidence in the record.  The parties were married in 2004 and had been married for approximately twenty years at the time of trial.  This was the second marriage for the husband and the first for the wife.  Both parties have children from previous relationships, and in 2008, the husband adopted the wife's minor son.

During the marriage, the parties maintained a middle-class lifestyle.  The parties did not vacation much, but they entertained regularly at the home they owned together in Roxbury (the marital home).  The husband worked as a firefighter for the city of Boston and was the primary wage earner in the marriage.  The wife worked as a dental assistant and as an emergency medical technician until 2013, when she stopped working due to her health and to care for her mother.  The wife is currently receiving social security disability insurance and is unable to work.

The parties stipulated, and the judge found, that as of February 2, 2016, there had been an irretrievable breakdown of the marriage.  At that point, the husband voluntarily moved out

2

of the marital home and soon thereafter, on February 25, 2016, the wife filed a complaint for divorce.

Due to restrictions imposed by the COVID-19 pandemic and for other reasons that are not clear from the record, the trial in this case commenced eight years after the complaint for divorce was filed. During that time, the following events of note occurred. On May 9, 2016, the parties executed an agreement which, in part, granted the wife sole physical custody of their minor child, allowed her to have sole use and occupancy of the marital home, and required the husband to pay expenses for the marital home in lieu of child support. Two years later, on May 24, 2018, the parties filed a joint stipulation related to the sale of the marital home in which they agreed to list the property for sale by June 29, 2018. However, the house was not listed by that date and was not sold until September 2021, at which time the proceeds of the sale ($249,941.78) were placed in escrow.

In light of the length of the marriage, the parties' mutual contributions to the marital partnership, and after consideration of all the statutory factors set forth in G. L. c. 208, § 34, the judge divided the remaining equity from the marital home equally between the parties.[2] In addition, the

---

[2] After adjusting for various advances taken by the parties, home and legal expenses, and disparities between the husband's

3

judge concluded that the wife was entitled to fifty percent of the marital coverture portion of the husband's firefighter pension from the date of the marriage to the date of the judgment.[3]  The judge also awarded the wife $398.00 per week in alimony and found that she was entitled to retroactive alimony.

Discussion.  Our review of a judgment pursuant to the equitable distribution statute, G. L. c. 208, § 34, proceeds under a two-step analysis.  "First, we examine the judge's findings to determine whether all relevant factors were considered (and whether irrelevant factors were disregarded).  Next, we decide whether the rationale underlying the judge's conclusions is apparent and whether these flow rationally from the findings and rulings."  Ravasizadeh v. Niakosari, 94 Mass. App. Ct. 123, 126 (2018), quoting Hassey v. Hassey, 85 Mass. App. Ct. 518, 524 (2014).  A judge's determinations as to equitable distribution will not be reversed unless they are "plainly wrong and excessive" (citation omitted).  Adams v. Adams, 459 Mass. 361, 371 (2011).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude

_____

payment of voluntary spousal support and the award of retroactive alimony, the judge ultimately awarded the remaining proceeds from the sale of the marital home as follows: $55,652.96 for the wife and $70,719.39 for the husband.  Neither party disputes these calculations.

[3] At the time of trial, the husband's pension was not yet in payout status.

4

the judge made 'a clear error of judgment in weighing' the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives." Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 9 (2016), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

1. Proceeds from the sale of the marital home. The husband first argues that the judge erred by dividing the proceeds from the sale of the marital home equally. He contends that he is entitled to a larger portion of the proceeds because (1) the wife's contributions toward the marital enterprise ended on April 6, 2017, when their son turned eighteen and she was no longer responsible for his care, (2) the husband alone was required to pay for all the expenses associated with the home until it was sold, and (3) the wife caused the delay in the sale of the home as she "refused to cooperate pertaining to the sale of the former marital home for a period of time in excess of three (3) years."

We discern no basis for disturbing the judge's decision regarding the division of the proceeds of the marital home. The judge made findings consistent with his obligation under the statute, he considered the relevant § 34 factors, and his reasons for his decision are apparent in his findings.[4] See

_____

[4] The factors the judge must consider are "the length of the marriage, the conduct of the parties during the marriage, the

5

Adams, 459 Mass. at 371; Ravasizadeh, 94 Mass. App. Ct. at 126.
In making his determination, the judge took into account that the wife's poor health affects her ability to maintain employment while the husband had no similar impairments. The judge also considered that the wife was limited in her ability to acquire assets and income in the future while the husband, who continues to work as a firefighter, was not so limited. In addition, the judge specifically "[did] not find that the [w]ife alone delayed the sale" of the home and, in fact, concluded that both parties were responsible for various delays in the proceedings. "There is no mathematical formula to determine what weight a judge should accord to any of the factors in § 34." Williams v. Massa, 431 Mass. 619, 631 (2000). Based on our review of the record, the equal division of the proceeds from the sale of the home was well supported, and by no means "plainly wrong and excessive." Id.

2. The husband's pension. Next, relying on Savides v. Savides, 400 Mass. 250, 252-253 (1987), the husband argues that

---

age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony, if any, awarded under sections 48 to 55, inclusive." G. L. c. 208, § 34. The judge "may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." Id.

6

the judge abused his discretion by measuring the marital coverture portion of his pension from the date of the marriage to the date of divorce judgment, March 20, 2024, rather than to April 6, 2017, the date on which their son turned eighteen.[5]

As an initial matter, we note that at trial the husband asserted that the operative termination date of the coverture period was September 13, 2021, the date the marital home was sold, or, in the alternative, May 24, 2018, the date the parties agreed to sell the marital home. The judge did not consider, nor was he asked to consider, the date of the son's emancipation as the operative termination date. Accordingly, this argument is waived. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 86 (2014) (issue raised for first time on appeal waived).

Next, as noted, the judge specifically found that both parties were responsible for the delay in selling the house. The husband does not contend that this finding is clearly erroneous and, in any event, even if he did so argue, the finding has support in the record. Thus, the only question before us is whether the judge abused his discretion by concluding that the proper valuation date was the date of the judgment rather than the date the marital home was sold.

---

[5] In contesting the valuation dates for his pension, the husband does not dispute the judge's decision to award the wife fifty percent of the marital coverture portion.

7

We acknowledge that while a judge has discretion to choose a valuation date that precedes the date of trial or judgment, "the marital estate is typically determined as of the date of the divorce trial." Moriarty v. Stone, 41 Mass. App. Ct. 151, 154 (1996). Here, unlike in Savides, 400 Mass. at 251, where the judge found that the marriage had "effectively" ended on the date of the parties separation, which occurred ten years prior to the divorce hearing, the judge in this case made no findings suggesting that the valuation date should not bear a relationship to the date of the divorce judgment. Although the husband and the wife separated in February 2016 and the house was eventually sold in September 2021, the judge found that "both parties were responsible for various delays in the proceedings including failing to comply with multiple court orders." This specific finding, coupled with the judge's overall consideration of the § 34 factors, leads us to conclude there was no abuse of discretion. See Trethewey v. Trethewey, 104 Mass. App. Ct. 114, 121 (2024) (judge did not err in setting date of valuation of marital estate as end of divorce trial given well-established practice of doing so and broad discretion afforded to judge as to date of valuation).

3. Attorney's fees. The wife has requested an award of appellate attorney's fees and "reasonable" costs. While we have not been persuaded by the husband's arguments, we do not believe

8

sanctions are warranted as we cannot say that the appeal was frivolous or initiated in bad faith.  See generally Avery v. Steele, 414 Mass. 450, 455 (1993).  Accordingly, we decline to exercise our discretion to award appellate attorney's fees and costs beyond those costs normally provided under Mass. R. A. P. 26, as appearing in 481 Mass. 1655 (2019). See Oxford Global Resources, LLC v. Hernandez, 480 Mass. 462, 478 (2018).

Judgment affirmed.

By the Court (Vuono, Henry & Wood, JJ.[6]),

Clerk

Entered:  July 28, 2025.

---

[6] The panelists are listed in order of seniority.